DAVID A. SWEARINGEN, by his Guardians and Next Friends William E. Swearingen *et al., et al.*, Plaintiffs-Appellants, v. ANN KORFIST, Defendant-Appellee.

Second District   No. 2—88—0742

Opinion filed April 11, 1989.

358

John E. Juergensmeyer and Judson L. Strain, both of Juergensmeyer, Strain & Associates, of Elgin, for appellants.

Richard J. Larson and Bernard K. Weiler, both of Puckett, Barnett, Larson, Mickey, Wilson & Ochsen, of Aurora, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This action was brought by plaintiffs, David A. Swearingen, by his guardians and next friends William E. and Carole A. Swearingen, and William E. and Carole A. Swearingen, individually, against defendant, Ann Korfist, for negligence and wilful and wanton misconduct for injuries sustained by David Swearingen while on defendant's property.

Summary judgment was granted in favor of defendant. Plaintiffs appeal.

On appeal, plaintiffs contend that the trial court incorrectly applied the obvious-risk doctrine as it applies to minor children injured by a dangerous condition located on a defendant's property. Plaintiffs further contend that, as a consequence, the trial court improperly entered summary judgment in favor of defendant. We affirm.

Plaintiff, David A. Swearingen, was 15 years old when he was injured on what was known in his neighborhood as "the pulley." The pulley is a device which consists of a pulley, three lengths of rope, and a newspaper bag. The longest rope is inserted through the pulley, and one end is tied approximately 13 to 20 feet high on the trunk of a tree. The other end of the rope is tied near to the ground on the trunk of another tree approximately 100 feet away. The newspaper bag is tied to the pulley with the shortest rope. The medium sized rope is then tied to the newspaper bag, allowing one to pull the newspaper bag along the rope while staying on the ground and to swing it up to the rider in the tree.

To use the pulley, a rider would climb up the tree where the high end of the rope was tied and climb into the newspaper bag, using it as a seat. The rider would then let gravity carry him down the incline of the rope to the tree at the other end. At the time of David's injury, on August 9, 1983, the high end of the rope was tied to a large oak tree on the property of Sherman and Carol Ovelman. The lower end of the rope was tied to a tree on defendant's property.

The pulley was originally constructed in May or June 1981 by defendant's sons, Chris and Matt Korfist, who were at the time 12 and 10 years old, respectively, and Keith and Jim Ovelman, who were at the time 13 and 11 years old, respectively. The newspaper bag was owned by Matt Korfist, and the rope and pulley were supplied from one of the boys' homes, another home in the neighborhood, or purchased new by the boys from a local hardware store. When originally constructed, the pulley was located entirely on defendant's property. In 1982 and 1983, the pulley was located on the property of defendant and the Ovelmans.

David first rode the pulley in 1981 and thereafter rode it numerous times in 1982 and 1983. David, along with the Ovelman and Korfist boys, was involved in setting up the device in 1982 and 1983. David helped put it up three times in 1982. In 1983, David contributed money toward the purchase of a new rope and a new pulley. He also went along with Keith Ovelman and Matt Korfist to purchase these items. According to David, a new rope was purchased because

the old rope was frayed. In his deposition, David stated that he personally had tied the bag onto the pulley a week or two before his fall. David also stated that he was aware that the pulley could be dangerous and knew that Jim Ovelman had fallen out of the bag before, though the bag itself did not fall on that occasion.

Statements in depositions made by witnesses other than defendant indicate that defendant was aware of the existence of the pulley for more than two years prior to David's injury.

Carol Ovelman, in her deposition, stated:

"[Defendant] told me she had seen them—had seen them using [the pulley], and she didn't like it—you know, after the accident she had said she seen them using it, and she didn't like the idea of it."

When asked whether she remembered exactly what defendant had said, Ovelman stated:

"Not specifically, just something to the—the idea of she didn't like them doing it, because she felt that they would fall, any of them, or—"

On August 9, 1983, David, accompanied by Jim Ovelman, went to ride the pulley. David rode the pulley one time with no incident. As David climbed into the newspaper bag to ride it a second time, knots in the rope which tied the bag to the pulley apparently came loose, causing plaintiff to drop to the ground, striking his head. An examination of the bag and the rope after the injury showed that it had not broken. Following David's injury, he spent several weeks hospitalized in a coma, and plaintiffs allege permanent injuries resulting therefrom.

Plaintiffs filed a six-count complaint against defendant, alleging negligence, willful and wanton misconduct, and maintenance of an attractive nuisance.

On May 2, 1988, defendant filed a motion for summary judgment on all six counts. The matter was briefed by both parties and argued before the trial court on July 1, 1988. The trial court granted defendant's motion as to all counts, stating that the counts were "dismissed with prejudice on 'the obvious risk doctrine.' " Plaintiffs timely appealed.

■ Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Guenther v. G. Grant Dickson & Sons, Inc.* (1988), 170 Ill. App. 3d 538, 541.) In reviewing the decision of the trial court's granting summary judgment, the function of the appellate court is to determine whether the record reflects an issue of material

fact and, if it does not, whether the trial court correctly entered judgment as a matter of law. 170 Ill. App. 3d at 541.

■ In a case involving the injury of a minor on the property of the defendant, ordinary principles of negligence apply. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 285; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 624.) As a general rule, landowners have no duty to keep their premises in any particular condition to promote the safety of those who come onto their property without invitation. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 325.) However, there is an exception to the rule where the owner knows or should know (1) young children habitually frequent the property; (2) a dangerous agency exists on the land; (3) the dangerous agency is likely to injure the children because they, by reason of their immaturity, cannot appreciate the risk involved; and (4) the expenses of remedying the condition are slight compared to the risk to the children. (*Guenther*, 170 Ill. App. 3d at 541; see also *Kahn*, 5 Ill. 2d at 625.) In such cases, the duty upon the landowner is to remedy the condition or otherwise protect children from injury resulting from it. *Kahn*, 5 Ill. 2d at 625.

It is well settled that, if the condition presents an obvious risk to children which they would be expected to appreciate and avoid, there is no duty to remedy that condition. (*Cope*, 102 Ill. 2d at 286.) Risks which are considered to be obvious to children include fire, water, and falling from a height. (102 Ill. 2d at 286-87.) However, factors may combine with what would otherwise be an obvious risk such that the risk is no longer considered obvious. (See *Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 190.) For example, what would otherwise be an obvious risk may not be obvious if the condition is hidden or if there is a distracting influence which makes it likely that the minor will not discover or appreciate the risk. See 166 Ill. App. 3d at 190.

■ In the instant case, plaintiffs contend that though David and children his age may have had an awareness that there was danger in heights, such knowledge is irrelevant. Plaintiffs contend that what is relevant is what children of David's age could be expected to know regarding the design and construction of the pulley. Plaintiffs argue that children of David's age could not be expected to know the danger of the type of rope that was used and its propensity for slipping. Plaintiffs therefore argue that the danger was not obvious. We disagree.

Although plaintiffs contend that David's individual knowledge of the pulley is irrelevant to the analysis, we find the contrary to be true. Our supreme court in addressing this issue has defined "dangerous condition" as one likely to cause injury "to *children generally*

who, by reason of their age and immaturity, would not be expected to comprehend and avoid the attendant risks." (Emphasis added.) (*Cope*, 102 Ill. 2d at 286; see also *Corcoran*, 73 Ill. 2d at 326.) From this statement, plaintiffs argue that the appropriate focus is on the knowledge of a typical minor of the plaintiff's age and that focusing on the knowledge of the individual minor involved in the case is inappropriate. We note that neither *Cope* nor *Corcoran* specifically addressed whether the individual minor's knowledge could be considered. However, in *Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 485-87, the court focused on the minor's activities relating to the dangerous condition and, thus, the minor's knowledge with regard to those activities. We also note that in *Corcoran* the court recognized that the rule adopted in *Kahn* for cases such as this brought Illinois into harmony with section 339 of the Restatement (Second) of Torts (Restatement (Second) of Torts §339 (1965)). (*Corcoran*, 73 Ill. 2d at 326.) Consequently, we find the comments to section 339 to be persuasive, wherein it is stated:

> "The purpose of the duty is to protect children from dangers which they do not appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known and appreciated danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but none the less [*sic*] chooses to encounter it out of recklessness or bravado." (Restatement (Second) of Torts §339, comment *m*, at 204 (1965).)

(See also Restatement (Second) of Torts §339, illustration to comment *m*, at 204-05 (1965).) While it would place an undue burden on landowners to focus on a minor's subjective inability to appreciate a risk where such inability was less than a typical minor of the plaintiff's age, we find that consideration of the minor's knowledge is appropriate where the minor has some greater understanding of the alleged dangerous condition than would a typical minor of his age. Our reasoning for this conclusion is that the whole basis of liability in cases such as this is the comparative knowledge of the minor and the landowner. Liability comes about because the landowner has greater knowledge and appreciation of a dangerous condition than does the minor. Where an individual minor is just as aware of the dangerous condition and can appreciate it to the same extent as the landowner,

liability should not be imposed. Consequently, we find that in a case where the minor has special knowledge regarding the alleged dangerous condition, that knowledge should be taken into account.

In addition to knowing the general danger of falling from heights, it is evident from David's deposition that he was intimately aware of the way in which the pulley was constructed and the materials with which it was constructed. As he stated, he had been present when the rope that was in use at the time of the fall was purchased and he had himself, on other occasions, tied the bag to the pulley. Given these facts, it is evident that David was aware of the dangerous character of the pulley. We therefore find that the trial court did not err in applying the obvious-risk doctrine in granting defendant's motion for summary judgment.

We note that plaintiffs also appear to argue that David could not have been expected to avoid the risk since it was evident that he and other children were continually using the pulley, and, therefore, the obvious-risk doctrine is inapplicable. We disagree. As we have indicated above, what is important is the fact that the minor can appreciate the risk, not that he will in fact avoid it. See Restatement (Second) of Torts §339, comment *m*, at 204 (1965).

Even if we were to find that the slipping of the knot was not an obvious risk to David, we would still affirm the summary judgment.

As we have previously noted, the duty of a landowner to a minor is only extended when the landowner knows of the dangerous condition. (See *Kahn*, 5 Ill. 2d at 625; *Guenther*, 170 Ill. App. 3d at 541; Restatement (Second) of Torts §339(b) (1965).) In the instant case, plaintiffs argue that defendant knew that the pulley was on her property and foresaw the manner in which David was injured. We agree that the record shows that defendant was aware of the existence of the pulley. We also agree that the record shows that, in a general way, defendant knew that the pulley could be dangerous. However, plaintiffs have not cited us to anywhere in the record, nor do we find any such place, that indicates that defendant was aware of some greater danger than was obvious to David. Specifically, there is nothing in the record that indicates that defendant knew or should have known that the rope had a propensity for coming undone as it did. Defendant did not design the pulley, there is no evidence that she ever tied any of the knots, and there is no evidence that she was aware that a knot had ever come undone before. In short, defendant was no more aware of the danger of the pulley than was David. The clear import of all cases is that liability exists only where the defendant has some knowl-

edge of a dangerous condition that is greater than that of the minor that is injured. In the instant case, such knowledge does not exist. Consequently, we find that summary judgment was appropriate.

In accordance with the foregoing analysis, we affirm the decision of the trial court.

Affirmed.

NASH and WOODWARD, JJ., concur.