BRADLEY HAGY, A Minor, by his Mother and Next Friend, Linda Hagy, Plaintiff-Appellant, v. McHENRY COUNTY CONSERVATION DISTRICT, Defendant-Appellee.

Second District   No. 2—89—0039

Opinion filed October 26, 1989.

834

Thomas A. Demetrio, of Corboy & Demetrio, P.C., of Chicago (Francis Patrick Murphy, of counsel), for appellant.

Robert S. Phillips, of Kell, Nuelle & Loizzo, of Woodstock (Vette E. Kell, of counsel), for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Bradley Hagy, appeals the order of the circuit court of McHenry County granting defendant McHenry County Conservation District's motion for summary judgment on the basis the district owed plaintiff no duty as a matter of law. We affirm.

Plaintiff was a ninth-grade student at Grant Community High School and had spent the better part of May 28, 1981, in school. After school, he went home and then rode his bicycle to his grandmother's house. After visiting with his grandmother, he set out on his bicycle for "the swimming hole," which was located at a bend on Nippersink Creek, about 1,000 feet from the end of Prospect Avenue in Spring Grove, Illinois. His mother and grandmother both told him to be careful when he told them he was going to the swimming hole. Nippersink Creek is a moderate-flow stream, 5- to 6-feet deep with some areas 10- to 12-feet deep. The area of the swimming hole is remarkable in

that, at the bend in the river, there is an embankment of 8 to 12 feet in height at a 90-degree angle with the plane of the land. The embankment was built in the 1900's as a dike in order to create a pond and has not been changed since save for natural erosion. There were no other similar structures in close proximity, and by May 28, 1981, the dike had partially eroded into the swimming hole. The district acquired title to this and other parcels in the area in 1980 intending to leave the area in its natural state, and no picnic, recreational areas or nature trails had been developed.

The plaintiff arrived at the swimming hole by riding his bicycle along a worn path from the end of Prospect Avenue. He saw no signs or fences along the path. He did not know who owned the area, but he thought it was "like a park area, you know, just a regular swimming hole." Plaintiff visited the area of the swimming hole many times in the past and had dived and swum there on numerous occasions, including twice a week in the previous summer. He also had walked at least a mile up and down the banks of the creek and had swung out over the creek in a tire that was tied to a tree, but he had not swum in any other area of the creek. Plaintiff learned to swim several years prior to the accident. He swam on a regular basis at the Boys' Club camp in Salem, Wisconsin, and attended this camp annually from age 7 to age 13. Although he knew how to swim before he went to camp, he received swimming instructions during the six years he attended camp, and his swimming experience included swimming at beaches and lakes. He admitted to doing "a lot of diving" before the date of the accident, including diving into a lake. Though his diving ability was self-taught, he knew how to do various types of dives such as back flips, forward flips, the jackknife, swan dive and the straight dive. On the day of the accident, he was attempting a straight dive.

It was the plaintiff's first trip to the swimming hole that year. He found several of his friends at the swimming hole upon his arrival. They were sitting on the grass about 10 to 12 feet to the left of the embankment. As plaintiff was coming up to the grassy area, he saw his friend, Rob Katherin, dive from the embankment into the creek and saw him emerge from the creek downstream about 10 to 15 feet from where plaintiff's friends were sitting. Plaintiff talked with his friends a while, then went to the top of the embankment and dove headfirst with his hands above his head into the creek and out about three to four feet from the bank. It did not occur to him to check the depth of the creek before he dove in, and he stated no one there suggested he check the depth of the water before diving. Plaintiff stated

the reason he dove in instead of jumped in was because he had dived there before. Plaintiff's head struck the creek bed, breaking his neck, and he is now a quadriplegic.

Plaintiff's complaint alleged the district owned and controlled the land and creek and that it held same out to the public as being reasonably safe for use by the public; that it was the district's duty to exercise reasonable care and diligence to keep and maintain said land and creek in a reasonably safe condition; that it nevertheless caused or permitted "the existence of a dangerous condition, namely a high embankment overlooking a segment of said creek, said segment containing an area several feet in circumference which is approximately five to six feet deeper than the surrounding ground level existing at the bottom of said creek bed, said segment further giving the appearance that the depth of said creek was uniform from the vantage point of said embankment, due to the muddy condition of the water in said creek"; that the district had notice and knowledge of the existence of the dangerous condition and that the general public frequented the land for recreational purposes including, but not limited to, hiking, swimming and diving from the embankment; that the district negligently breached its duty of care by failing to warn of the dangerous condition or to prohibit swimming or diving, by permitting the existence of the dangerous condition, by failing to inspect the bottom of the creek, and by maintaining the land in a condition unsafe for members of the public; and that as a proximate result of one of more acts of negligence, he was injured.

The district answered, admitting ownership and control of the land and knowledge that members of the general public used the land for recreational purposes. It subsequently moved for summary judgment, arguing that it owed no duty to the plaintiff to remedy a condition which presented an obvious risk. The district's motion was supported by the discovery depositions of plaintiff, Edward Kattner, a resident of the area in question, Kenneth Fiske, then executive director of the McHenry County Conservation District, the statements of Linnae Kaminski and Jeffrey Collins, who were present when plaintiff's injury occurred, and various plats, surveys and photos of the area of the creek and embankment. Plaintiff's response to the motion for summary judgment included an affidavit of Dr. M.A. Gabrielsen. The affidavit set forth his qualifications as an aquatic safety and recreation expert and his expert opinions that the dangerous condition was not open and obvious since the effect of the ongoing erosion process was hidden and concealed below the surface of the moderate-current always-muddy water, and that the man-made levee (the embank-

ment) caused a slower current which, combined with the height of the levee and the bend in the creek, made a perfect swimming spot which should have been posted with adequate warning signs and controlled. On motions of the parties, the court struck Kaminski's and Collins' statements and Dr. Gabrielsen's affidavit, and it granted the district's motion for summary judgment.

The plaintiff raises these issues: (1) whether the trial court erred in expanding the dangers deemed obvious to children to include the risk of injury from diving into water; (2) whether the trial court erred in striking the affidavit of his expert, Dr. M.A. Gabrielsen; and (3) whether the trial court erred in granting the defendant's motion for summary judgment.

### OBVIOUSNESS OF THE DANGER

■ Plaintiff acknowledges the abandonment in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, of the "attractive nuisance" doctrine and its replacement with the customary rules of ordinary negligence— *i.e.*, the foreseeability of harm—in determining the liability of landowners and occupiers of land for injuries caused by conditions on the land to children who enter upon it. Plaintiff also notes the exception identified in *Kahn* that a duty not imposed under the rules of ordinary negligence will be imposed, however,

> "where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risks involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it." *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625.

■ This exception has not been interpreted to mean that owners or parties in possession and control of premises are duty-bound to remedy all conditions on the land. It is clear there is no duty to remedy a dangerous condition which presents an *obvious risk* which children would be expected to appreciate and avoid. *Cope v. Doe* (1984), 102 Ill. 2d 278, 286; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.

Plaintiff notes three risks or dangers which have been identified

as being obvious to children are those of fire, water, and falling from a height, citing *Corcoran* and *Cope*, which approved of the comments set forth in section 339 of the Restatement of Torts. (*Corcoran*, 73 Ill. 2d at 327; *Cope*, 102 Ill. 2d at 286-87; Restatement (Second) of Torts §339, comment *j*, at 203 (1965).) According to the Restatement, liability as to such obvious dangers will not lie "in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or [there is] a distracting influence which makes it likely that the child will not discover or appreciate it." Restatement (Second) of Torts §339, comment *j*, at 203 (1965).

Citing numerous cases which have applied section 339 of the Restatement in instances involving water (*e.g., Old Second National Bank v. Aurora Township* (1987), 156 Ill. App. 3d 62 (14-year-old drowned); *Durham v. Forest Preserve District* (1986), 152 Ill. App. 3d 472 (16-year-old drowned); *Christon v. Kankakee Valley Boat Club* (1987), 152 Ill. App. 3d 202 (nine-year-old drowned)), fire (*Sampson v. Zimmerman* (1986), 151 Ill. App. 3d 396 (four-year-old burned by a candle)) and falling from a height (*e.g., Batzek v. Betz* (1988), 165 Ill. App. 3d 399 (14-year-old fell while climbing a tree); *Alop v. Edgewood Valley Community Association* (1986), 154 Ill. App. 3d 482 (six-year-old fell off a slide); *Newby v. Lake Zurich Community Unit, District 95* (1985), 136 Ill. App. 3d 92 (17-year-old fell from a tree)), plaintiff concludes Illinois has not expanded the exception to *Kahn* liability beyond the open and obvious dangers that one may drown in water, that fire burns, and that one may fall from a height. Thus, plaintiff asserts, it was error for the court to expand the list by finding as a matter of law that diving into water was a danger obvious to children.

■ The district asserts the trial court did not expand the dangers deemed obvious to children as established in Illinois law. Rather, the district asserts, the issue which confronted the trial judge was whether Bradley Hagy at age 15 years and 2 months was mature enough to appreciate the risk and danger of diving from an embankment or cliff at a height of 8 to 12 feet into a muddy creek, an act which involved two of the three recognized obvious risks, water and falling from a height.

It was stated in *Corcoran*:

"Unless an owner or occupier has reason to know that children of very tender age are likely to roam unattended onto the premises, the law will impose a duty on the owner or occupier only to remedy conditions which are dangerous to *children gen-*

*erally.*" (Emphasis added.) (*Corcoran*, 73 Ill. 2d at 327.)

It has also been stated that "the duty issue is broad in its implication and it is only the jury's negligence determination which need be strictly confined to the facts of the particular case." (*Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 663.) Notwithstanding the usual objective nature of the court's duty analysis, we have found that consideration of the particular minor plaintiff's knowledge is appropriate where the minor has some greater understanding of the alleged dangerous condition than would a typical minor of the same age. (*Swearingen v. Korfist* (1989), 181 Ill. App. 3d 357, 361-63.) By virtue of the procedural posture of the instant case, the court was apprised through the plaintiff's deposition testimony of his considerable swimming and diving experience not only at the instant site, but in other bodies of water as well. The court's written opinion expressly noted the plaintiff's background experience in swimming and diving, and we do not construe its judgment to be an expansion of the list of dangers obvious to children generally. Rather, its judgment reflects its opinion that the defendant owed no duty to this plaintiff where the plaintiff in fact knew of the condition—or at least had knowledge of the condition equal to that of the defendant—and was able to appreciate the risk involved but nevertheless chose to undertake it. See *Swearingen*, 181 Ill. App. 3d at 362, 363-64; Restatement (Second) of Torts §339, comment *m*, at 204 (1965).

Plaintiff's implication that the mere fact of expansion would *per se* be error and that there are no dangers other than water, fire and heights which could be considered obvious to children is unsupported by any authority and, in fact, is contrary to the clear language of section 339, which recognizes there are "*many dangers* \*\*\* which under ordinary conditions may reasonably be expected to be fully understood and appreciated *by any child of an age to be allowed at large.*" (Emphasis added.) Restatement (Second) of Torts §339, comment *j*, at 203 (1965).

## PLAINTIFF'S EXPERT'S AFFIDAVIT

Plaintiff argues this affidavit should not have been stricken since, unlike the affidavit in our opinion in *Old Second National Bank v. Aurora Township* (1987), 156 Ill. App. 3d 62, which was suggested to have improperly invaded the province of the court by opining as to the obviousness of the condition, Dr. Gabrielsen's affidavit "merely identified the dangerous condition upon which the court could then determine the existence of the duty."

Plaintiff's contention is refuted by the affidavit itself. Based, *inter*

*alia,* upon the deposition of Bradley Hagy and inspection of the site, Dr. Gabrielsen states therein that (a) the dangerous condition of the property was not open and obvious since the effect of the ongoing erosion process was hidden and concealed below the water surface; (b) the effects of erosion are not open and obvious from month to month or season to season because this process is below the water surface; (c) the water is always muddy due to the moderate current over the soil bottom of the creek, and, therefore, one cannot see the stream side effects of erosion contrasting with the rest of the water; (d) the man-made levee made an attractive diving platform and caused a slower current which, combined with the levee and the elbow in the river, made a perfect swimming spot; (e) the artificial, man-made levee and resultant swimming/diving area should have been posted with adequate warning signs and adequately patrolled with enforcement of district rules and regulations; (f) the area should have been fenced or barricaded to prevent users of the district property from gaining access to said area; and (g) it was the dangerous and hidden condition of the McHenry County Conservation District's property of May 28, 1981, which proximately caused plaintiff's injury.

Consequently, Dr. Gabrielsen's affidavit does not merely identify the dangerous condition but concludes the condition was not "open and obvious." Dr. Shack's affidavit in *Old Second National Bank* was offered to show that the scene of the drowning constituted a dangerous condition which the 14-year-old plaintiff in *Old Second National Bank* was not able to appreciate. We opined that Dr. Shack's affidavit was "not appropriate for consideration in a case such as the one at hand, where the danger being considered is one of water, fire, or falling from a height, which under ordinary circumstances may reasonably be expected to be fully understood and appreciated by a child of the age of plaintiff's decedent." (*Old Second National Bank,* 156 Ill. App. 3d at 66-67.) Upon considering it, however, we found Dr. Shack's affidavit was properly stricken because it was based on a subjective standard, rather than an objective one, and because it failed to comply with Supreme Court Rule 191 (107 Ill. 2d 191).

■■ ■ Plaintiff correctly notes the "modern standard" for admissibility of expert testimony is whether such testimony will aid the jurors' understanding of the facts. (*Ketchum v. Dura-Bond Concrete, Inc.* (1989), 179 Ill. App. 3d 820, 831.) However, Dr. Gabrielsen's affidavit contrasts sharply with the detailed testimony offered by plaintiff's expert witness in *Leonard v. Pitstick Dairy Lake & Park, Inc.* (1984), 124 Ill. App. 3d 580, cited by plaintiff, as to whether it was dangerous for the defendant to permit youngsters to make a running,

headfirst entry into the wading area of defendant's commercial lake. It also stands in sharp contrast to the deposition testimony of plaintiff's expert witness in *Corbin v. Coleco Industries, Inc.* (7th Cir. 1984), 748 F.2d 411, a products liability case also cited by plaintiff, to the effect that even though people are generally aware of the danger of diving into shallow water, they believe there is a safe way to do it, namely, by executing a flat, shallow dive. An expert's opinion may be excluded where it offers no aid to the trier of fact in determining questions at issue (see, *e.g.*, *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90), and affidavits which state mere conclusions are insufficient to defeat a motion for summary judgment (*In re E.L.* (1987), 152 Ill. App. 3d 25). Dr. Gabrielsen's largely conclusional affidavit contained no facts which would have assisted the court in deciding whether the plaintiff could appreciate the risk of diving from a height into a muddy-water creek of uncertain depth, nor, in fact, did Dr. Gabrielsen's affidavit purport to reach the conclusion that the plaintiff could not appreciate the fact that erosion which cannot be seen occurs below the surface of the water. (See *Miklos v. Caliendo* (1987), 161 Ill. App. 3d 132; *Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 482.) We conclude the court did not err in striking it.

### SUMMARY JUDGMENT

A summary judgment is properly granted when the pleadings, depositions and affidavits show no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Estate of Henderson v. W.R. Grace Co.* (1989), 185 Ill. App. 3d 523.) In ruling on a motion for summary judgment, the court must construe the evidence shown by the depositions, admissions and affidavits strongly against the movant. (*Schroth v. Norton Co.* (1989), 185 Ill. App. 3d 575.) Summary judgment should be awarded with caution so as not to preempt the right to trial by jury or the right to present fully a factual basis for a case when a material dispute may exist. (*Guthrie v. Zielinski* (1989), 185 Ill. App. 3d 266.) Summary judgment is appropriate, however, where there is no dispute as to any material fact but only as to the legal effect of the facts. (*First State Bank v. Busse* (1984), 126 Ill. App. 3d 577.) A party seeking summary judgment must affirmatively show a clear legal right to summary judgment, and, if any facts exist which allow for more than one conclusion or inference, including one unfavorable to movant, the motion must be denied, and the resolution of those facts and inferences must be left for determination at trial.

*Dockery v. Ortiz* (1989), 185 Ill. App. 3d 296; *Vincent DiVito, Inc. v. Vollmar Clay Products Co.* (1989), 179 Ill. App. 3d 325.

The existence of a duty is a question of law properly decided on a motion for summary judgment, because absent a legal duty, there can be no recovery in negligence as a matter of law. (*Kokoyachuk v. Aeroquip Corp.* (1988), 172 Ill. App. 3d 432, 436; *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330, 331.) In invoking the summary judgment procedure, a defendant concedes that the pleadings are valid, but contends the additional facts contained in the plaintiff's deposition leave no material issues of fact. (*Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 190.) In the absence of any showing upon which the court could infer the existence of a legal duty on the part of the defendant, no recovery would be possible as a matter of law, and summary judgment in favor of the defendant in a negligence action would be proper. (*Mason*, 173 Ill. App. 3d at 331; *Keller v. Mols* (1984), 129 Ill. App. 3d 208, 210.) On appeal from the grant of a motion for summary judgment, the reviewing court must determine whether the trial court properly ruled that no genuine issue of material fact was raised and, if none was raised, whether summary judgment was properly entered as a matter of law. (*Dockery*, 185 Ill. App. 3d at 305.) An order allowing summary judgment will be reversed on appeal if the reviewing court determines that a genuine issue of material fact exists. *Addison v. Whittenberg* (1988), 124 Ill. 2d 287.

Because there is a duty on the part of landowners only to remedy those conditions which, although considered harmless to adults, are dangerous to children by reason of their immaturity, plaintiff asserts the determination of whether the condition on the defendant's property presented an obvious risk is essential. As to this essential determination, plaintiff argues that if this court reverses the trial court's order striking Dr. Gabrielsen's affidavit, then a question of fact will arise as to the precise nature of the dangerous condition which caused his injury, inasmuch as the defendant argued at the summary judgment hearing that it was the water which was the dangerous condition, whereas it was plaintiff's position that it was the man-made dike and unseen erosion which caused his injury.

The defendant argues that even if this court reverses the court's order striking Dr. Gabrielsen's affidavit, there is no genuine issue of material fact as to what the purported dangerous condition on the defendant's premises was. We agree.

Although the defendant did refer at the hearing to the risk presented by the instant condition as the risk generally presented by water, it does not dispute the existence of the man-made dike or that

the depth of the creek varied. Based on the pleadings, admissions, depositions and affidavits, there is no question that there was on the premises an 8- to 12-foot high man-made embankment located at the bend of a soil-bottom moderate-flow creek of varied depths where children were known to swim. Consequently, there is no genuine issue of material fact as to what the condition on the defendant's premises was, only the *legal effect* of the existence of such condition.

Plaintiff further asserts that a question of fact exists as to whether the condition presented an obvious risk to children. Under the law, the defendant here owed no duty to the plaintiff to protect him from obvious or common conditions. (*Corcoran*, 73 Ill. 2d at 326.) Necessarily, then, the court's duty determination—a question of law (*McLane v. Russell* (1989), 131 Ill. 2d 509, 515)—included consideration of whether the condition presented an obvious risk. The court here found the danger presented to the plaintiff by diving from a height of 8 to 12 feet into a meandering creek without checking for changes in the depth of the creek from the preceding year was an obvious one, and, thus, the defendant owed plaintiff no duty to protect him from it.

Plaintiff argues, however, that the danger presented by diving is quite complex and, therefore, is not one which would be obvious to a child. He cites *Leonard v. Pitstick Dairy Lake & Park, Inc.* (1984), 124 Ill. App. 3d 580, in support. The diving being considered in *Pitstick*, however, was surface or horizontal diving while in shallow water at a commercial lake as opposed to the headfirst vertical dive from a considerable height into a creek of uncertain depth which is at issue here. If the risk of falling from a height may reasonably be expected to be understood by any child of an age allowed to be at large, certainly vertical diving from a height into muddy water also presents an obvious risk. A body suddenly sprung from the gravity which secures all things is only momentarily weightless and will be constrained again as surely as Newton's apple. The impact with which the reconstraint will occur is estimable, but uncertain where the intensity of the impact will be heightened or diminished by a factor—here, muddy water—which alone presents the obvious risk that it will be too deep for the nonswimmer or too shallow for the diver. (See *Scheeler v. Bahr* (1969), 41 Wis. 2d 473, 164 N.W.2d 310.) There was nothing unusual or deceptive about the moving creek here which presented a special or indiscernible danger which could not have been appreciated by this 15-year-old plaintiff. *Cf. Sumner v. Hebenstreit* (1988), 167 Ill. App. 3d 881 (that soft sand on the bottom of a body of water shifts with currents and disturbances is a condition which rea-

sonably could be expected to be understood by the 19-year-old trespasser).

Plaintiff also cites *Hughes v. Quarve & Anderson Co.* (Minn. 1983), 338 N.W.2d 422, in support of his argument the obviousness of the danger of diving to a teenage boy is suspect. In *Hughes,* the Minnesota Supreme Court affirmed a jury verdict for the 16-year-old quadriplegic plaintiff. It found it was not error for the trial court to hold the plaintiff not to be an adult trespasser as a matter of law and that the jury was properly instructed that the defendant's duty to the plaintiff was governed by section 339 of the Restatement (Second) of Torts. The plaintiff there made a running, headfirst dive from the shoreline of the defendant's quarry pond expecting a drop-off but encountering sand instead. A front-end loader had dumped and smoothed two shovelsful of sand on the shoreline of the accident site three weeks earlier. In affirming, the court noted the large number of cases involving teenage boys and driving accidents "indicates that mature judgment at age 16, at least as it regards personal safety, cannot be assumed to be the norm." (*Hughes,* 338 N.W.2d at 425.) The court also relied on evidence from a psychologist in the record that the 16-year-old plaintiff was very immature compared with other 16-year-olds.

No question has been raised here as to whether the plaintiff here falls within the scope of the *Kahn* exception, although we note that plaintiff's complaint only alleges defendant's knowledge of use of the site by the general public. Moreover, a lack of "mature judgment" does not negate the ability to *recognize or appreciate* an obvious risk; rather, it suggests that obvious risks nonetheless may be undertaken. (See *Swearingen v. Korfist* (1989), 181 Ill. App. 3d 357, 363 ("[W]hat is important is the fact that the minor can appreciate the risk, not that he will in fact avoid it").) Further, if the standard for determining the obviousness of risks to children was measured by the frequency of cases involving them, the obvious risks of water, fire and falling from a height would have to be eliminated, as well.

The additional cases plaintiff cites (*Markowitz v. Arizona Parks Board* (1985), 146 Ariz. 352, 706 P.2d 364; *Dumas v. Pike County* (S.D. Miss. 1986), 642 F. Supp. 131) in support of the proposition that the risk of injury from diving is one which is not readily apparent to children are distinguishable. The 15-year-old plaintiff in *Markowitz,* an invitee, was injured when he dove into a cove in a recreation area leased by the State of Arizona and struck his head on a shallow ledge or sandbar below the surface. The State was granted summary judgment on its claim that it *breached* no duty owed to the plaintiff, and

the court of appeals affirmed. The Arizona Supreme Court reversed, however, finding there were many inferences which could be drawn from the facts as to whether the State exercised reasonable care for the plaintiff's safety and that one of the factors to be considered in drawing such inferences is whether the condition was open and obvious. Thus, the openness or obviousness of the condition was not a factor there in determining whether plaintiff was owed a duty—a question of law; rather, only insofar as whether the duty owed was breached, a question of fact. Unarguably, Arizona recognized that a possessor of land is under an affirmative duty to use reasonable care to make the premises safe for use by invitees. The question here, however, was whether in the first instance the undisputed facts raised a duty owed by the defendant to the plaintiff to protect him from "a dangerous condition," *i.e.*, one which the plaintiff could not appreciate the risk of by reason of his age and immaturity. *Alop*, 154 Ill. App. 3d at 484-85.

██ *Dumas* is more distinguishable. The plaintiff in *Dumas*, whose age was not mentioned, was rendered a quadriplegic when he dove from an earthen platform located five to six feet above a river which meandered through a county water park and, in parts, through the property of an individual defendant. His head struck the river bottom. As to the county, the plaintiff was considered a business invitee. The county moved for summary judgment based on a statute which provided riparian landowners an absolute assumption of risk defense to tort liability for accidents occurring in the waterways. Because the asserted negligence, however, was the maintenance of the land from which the plaintiff had dived and not the waterway, a question of fact concerning premises liability remained which was sufficient to defeat summary judgment. The court also rejected summary judgment for the individual defendant on the basis of this same assumption of the risk defense and also on the basis of another statute exempting lessees and owners of land or water areas opened up for public use from any duty or liability to those members of the public who avail themselves of the use thereof. The court further rejected the individual defendant's contention the plaintiff was a trespasser to whom he owed only the duty to refrain from wilful and wanton injury. The court found there was a question of fact as to whether the plaintiff was a licensee based upon evidence which tended to show the landowner permitted plaintiff to enter the land and summary judgment was precluded thereby. Accordingly, the authorities cited by plaintiff fail to support his position that the danger of diving from the defendant's embankment into the creek was not one which would be obvious to a child.

Plaintiff's final contention is that a question of fact exists as to whether the combination of the dike, water, and erosion presented a hidden danger rather than an obvious risk. Defendant's argument that this presents a new theory which was not advanced by plaintiff below is well taken. It is settled that a theory which is not raised at trial cannot be raised for the first time on appeal. (*IMM Acceptance Corp. v. First National Bank & Trust Co.* (1986), 148 Ill. App. 3d 949.) Accordingly, this issue is not properly preserved for appeal.

In sum, we conclude no genuine issues of material fact exist, and the judgment of the circuit court of McHenry County granting the defendant summary judgment is hereby affirmed.

Affirmed.

DUNN and WOODWARD, JJ., concur.