THE PEOPLE *ex rel.* JAMES E. RYAN, State's Attorney for the County of Du Page, Plaintiff-Appellant, v. THE VILLAGE OF VILLA PARK *et al.*, Defendants-Appellees.

Second District   No. 2—90—0535

Opinion filed April 10, 1991.—Rehearing denied May 14, 1991.

James E. Ryan, State's Attorney, of Wheaton (Keith E. Letsche, Assistant State's Attorney, of counsel), for appellant.

John N. Pieper, Village Attorney, of Villa Park, for appellees.

JUSTICE DUNN delivered the opinion of the court:

James E. Ryan, the State's Attorney of Du Page County, brought an action on behalf of the People of the State of Illinois for injunctive and declaratory relief against the Village of Villa Park (Village) and several members of its board of trustees (Board), alleging that the Board held a closed meeting on February 22, 1988, in violation of the Open Meetings Act (Act) (Ill. Rev. Stat. 1989, ch. 102, par. 41 *et seq.*). The circuit court of Du Page County granted summary judgment to defendants on the basis that an exception to the Act applied because the acquisition of real estate was considered at the meeting. On appeal, plaintiff contends that the above exception, found in section 2(c) of the Act (Ill. Rev. Stat. 1983, ch. 102, par. 42(c)), only applies if a public body is involved in actual negotiations to purchase specific real estate; if the body is formulating the terms of an offer to acquire real estate; or if the body is conducting deliberations about an offer it intends to make, or an offer from a prospective seller. We reverse.

The relevant facts are not in dispute. On or about January 7, 1988, the Village manager of Villa Park, Paul Wenbert, found out about a program sponsored by the Forest Preserve District of Du Page County (Forest Preserve District) in which the district would consider proposals from municipalities to purchase land for flood control and recreational purposes. Within the next month, Wenbert found out that the Forest Preserve District expected participating municipalities to make financial contributions for land acquisition under the program. While Wenbert was attending a meeting with Forest Preserve District staff members during this period, he was

told that no proposal from the Village would be considered unless it contained a commitment of Village funds.

The Villa Park Board of Trustees met in closed session on February 1, 1988, to discuss the Forest Preserve District conservancy program and areas of the Village that might be suitable for the program. Wenbert and William Boyd, the Village director of public works, told the Board about the requirements for participation which included submission of a proposal by the end of the month, payment of a portion of the costs of buying the property involved, committing Village funds for the proposal, and jointly developing any proposal with the City of Elmhurst.

The Board also discussed areas of the Village that might be included in the program. The discussion centered around a strip of land along Route 83 between the Illinois Prairie Path and Madison Street. The trustees spoke of preserving this area as a "greenbelt" and constructing an earthen berm along it which would hold back flood waters from the Salt Creek. An eight-foot-wide recreational path would be built atop the berm for walking, biking, jogging, and cross-country skiing. Boyd estimated that the fair market value of the property that would have to be acquired was $335,000. One trustee stated, however, that it could cost as much as $600,000 to obtain the land, a lengthy narrow strip which contained three houses. One member of the Board stated that, at a minimum, the Village would have to propose paying 25% of the land acquisition costs.

At the February 1 closed session, the trustees also talked about the possibility of closing off access to two streets from Route 83 near the site of the proposed "greenbelt berm" and the potential traffic problems that could result. They also discussed the possibility of having noise barriers constructed by the Department of Transportation along Route 83.

The Board held another closed meeting on February 22, 1988, during which it again discussed possible participation in the Forest Preserve District conservancy program. At this meeting, a report was presented from Village engineer Kenneth Magnus regarding the proposed greenbelt berm along Route 83.

The report concerning the greenbelt berm project states as follows. The berm was intended to protect 56 homes between Route 83 and Riverside Drive from flooding from the Salt Creek. A recreational path atop the berm could be used for various activities including jogging and bicycling. The berm would be approximately three-quarters of a mile long with a maximum height of six feet. It

would be located along the west edge of the land to be obtained, which would total 7½ acres. This land consisted of 45 parcels of property, including 19 subdivided lots, and portions of the backyards of some homes located on Riverside Drive. The land contained three homes. The estimated market value of the land, including the homes, was $457,287.

The report further states that the greenbelt land would provide a location for the installation of a noise barrier along Route 83 and a visual barrier between the highway and the nearby residences. Additionally, it would be necessary to install a flap gate in a storm sewer on Highland Avenue to prevent Salt Creek backup past the berm. Total construction cost for the greenbelt berm project was estimated at $180,180. The Board directed that the greenbelt berm proposal as outlined in the report be submitted to the Forest Preserve District.

It is undisputed that there was no discussion at the February 1 or February 22 meetings as to how the property in question would be acquired or what titled interest, if any, the Village would receive. Village representatives did not discover until March 10, 1988, that they would be responsible for obtaining title to the property.

In plaintiff's amended complaint, it was alleged that defendants violated the Act by holding the closed session on February 22. Plaintiff sought a declaratory judgment to that effect along with injunctive relief to prohibit future violations. Plaintiff and defendants filed cross-motions for summary judgment. The trial court denied plaintiff's motion and granted defendants' on the basis that a closed session was proper under section 2(c) of the Act (Ill. Rev. Stat. 1989, ch. 102, par. 42(c)) because potential land acquisition was discussed. Plaintiff now appeals.

■ Although summary judgment is a drastic remedy which should only be employed if the right of the movant is free from doubt (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240), it is appropriate when the parties agree on the material facts, and they only dispute the legal effect of those facts. (*Hagy v. McHenry County Conservation District* (1989), 190 Ill. App. 3d 833, 842.) In the present case, the parties do not dispute the relevant facts; they only differ as to whether, under that state of facts, defendants violated the Act. Therefore, this was a proper case for summary judgment although a question remains as to whether plaintiff should have been granted summary judgment instead of defendants.

Section 2 of the Act states in relevant part as follows:

"All meetings of public bodies shall be public meetings except for \*\*\* (c) meetings where the acquisition of real property is being considered \*\*\*.
\* \* \*

Only those portions of any meeting expressly enumerated herein as exceptions may be closed. No final action may be taken at a closed meeting." (Ill. Rev. Stat. 1989, ch. 102, par. 42.)

Section 1 states it is the intent of the Act that public bodies conduct their deliberations and take their actions openly. (Ill. Rev. Stat. 1989, ch. 102, par. 41.) Since the exceptions set forth in section 2 to the general rule of open meetings are in derogation of this expressed intent these exceptions should be construed narrowly. *Illinois News Broadcasters Association v. City of Springfield* (1974), 22 Ill. App. 3d 226, 228.

Plaintiff contends that the exception set forth in section 2(c) of the Act only applies if a public body is formulating the terms of an offer to acquire real estate, deliberating on the terms of an offer to sell real estate made to that body, discussing strategies for acquiring real estate, or discussing pending negotiations for the purchase of real estate by that body. According to plaintiff, a narrow construction of section 2(c) is in accord with the intention expressed in section 1.

Defendants argue that such a narrow construction of section 2(c) would hamper the public in many instances. With regard to the instant case, defendants contend that disclosing the Village's potential interest in the real estate may have led to land speculation which would have increased its fair-market value. Additionally, defendants note that the Board discussed estimates of the fair-market value of the land on February 1 and 22, and disclosure of the Board's estimates may have affected its negotiating position.

■ A statute should be construed to give effect to the intention of the legislature. (*Gosnell v. Hogan* (1989), 179 Ill. App. 3d 161, 170.) Since the language of a provision is the best indication of the drafters' intent, if that language is unambiguous, the plain and ordinary meaning of that language will be given effect. (See *Maloney v. Bower* (1986), 113 Ill. 2d 473, 479.) If there is an ambiguity, however, other aids in construction may be considered, including the reason for the law, the purpose sought to be achieved through its passage, and the evils sought to be remedied. See *American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 239; *Chastek v. Anderson* (1981), 83 Ill. 2d 502, 511.

The parties appear to agree that the language of section 2(c) which exempts from the general rule of public meetings, "meetings where the acquisition of real property is being considered" (Ill. Rev. Stat. 1989, ch. 102, par. 42(c)), is ambiguous. In our view, this exception can reasonably be construed in the more expansive manner suggested by defendants. This would permit closed meetings to be held whenever specific real estate was to be discussed in connection with a proposed governmental program or project which was being considered that would require the acquisition of real estate.

■■ The language can also reasonably be construed in the manner suggested by plaintiffs. Under this interpretation, since the Board in its February 1988 closed meetings did not discuss how it would try to obtain the property, or the terms of any offer or potential offer to purchase it, the exception would not apply. Thus, under this interpretation, while the Board discussed including the land in the conservancy program, and may have considered *attempting* to acquire it, the Board did not yet consider actually acquiring it at this preliminary stage in the absence of a discussion of the aforementioned matters. We therefore conclude that section 2(c) is ambiguous.

In light of this ambiguity, we will consider which interpretation best achieves the objectives the legislature sought to attain in passing the Act, and which interpretation best remedies the evils the legislature sought to be eliminated. As we have seen, section 1 states it is the intent of the Act that deliberations of public bodies be conducted openly (Ill. Rev. Stat. 1989, ch. 102, par. 41). Furthermore, after section 2 lists the exceptions to the general rule of open public meetings, it states, "[o]nly those portions of any meeting expressly enumerated herein as exceptions may be closed." (Ill. Rev. Stat. 1989, ch. 102, par. 42.) The legislature clearly sought to permit closed meetings only when absolutely necessary.

When public bodies hold closed meetings, the possibility of citizen input on the matters discussed at the meeting is eliminated. Closed meetings may also make it easier for public officials to shield themselves from public accountability for views expressed or actions taken at the meeting. The drafters of the Act recognized the value of citizen input and participation in government in a democratic society and therefore sought to remedy the above evils.

In the case at bar, the Board discussed matters at the February 1 and 22 closed sessions that were of great significance to Villa Park citizens. The proposed construction of the greenbelt berm, the proposed sewer flap gate, and the potential land acquisition would

have involved a large expenditure of Village funds. Obviously, efforts at flood control in regions such as the Salt Creek area where flooding is a major concern are of tremendous importance to affected landowners. The Board also discussed other matters of interest to the citizenry such as potentially closing off access from a couple of side streets to Route 83 and having a noise barrier constructed along Route 83.

Defendants argue that the closed meetings were necessary because disclosure of the Village's potential interest in obtaining the land in question may have led to land speculation which could have driven up the value of the property. Although there is some validity to this concern, we believe it is outweighed by other concerns. If a public agency decides to try to purchase property, it must eventually disclose this desire to the owner. This makes it impossible to eliminate the potential danger of land speculation. Furthermore, such disclosure does not necessarily drive up the value of property; it may have the opposite effect, or no effect.

Adopting defendants' position would mean that public agencies could hold closed meetings any time they discussed programs or projects that necessarily involve land acquisition, as long as they mentioned specific parcels that might be obtained. This is precisely what occurred in this case, as the Village trustees went behind closed doors, discussed participation in a significant intergovernmental program, and decided to submit a proposal for participation in the program. Defendants' logic could lead to foreclosure of public debate on significant matters such as airport expansion and construction of stadia for sports franchises. This is completely contrary to the objectives of the Act.

Moreover, in some instances, disclosure of the location of land that might be obtained for a project or program could serve the public interest by spurring public debate over matters such as whether the land is suitable for the project, whether other land may be less expensive or more suitable, and whether other concerns exist which indicate the present use of the land should be maintained. Because of these factors, we conclude plaintiff's interpretation of section 2(c) is consistent with the Act's objectives, and we therefore adopt that interpretation. The exemption in section 2(c) of the Act only applies if public agencies are discussing formulating the terms of an offer to purchase specific real estate or discussing the seller's terms, or if it is considering strategy for obtaining specific real estate. Our position is consistent with the holding of the Missouri Appellate Court in *Tipton v. Barton* (Mo. App. 1988), 747 S.W.2d 325.

In *Tipton,* the court interpreted a similar exception in the Missouri Open Meetings Act and stated, "the actual terms of any real estate transaction or a negotiating position of the city is not disclosed \*\*\*, and a mere reference to a real estate transaction is not sufficient to trigger [the exception]." *Tipton,* 747 S.W.2d at 331.

■ It is undisputed that the aforementioned matters were not discussed at the February 1 or February 22 meetings. Therefore, defendants violated the Act, and summary judgment should have been granted to plaintiff. We therefore reverse the order of the circuit court of Du Page County granting summary judgment to defendants and remand the cause with instructions to grant plaintiff's motion for summary judgment. The relief granted shall include a declaration that the Board violated the Act by holding a closed meeting on February 22, 1988, and an injunction prohibiting future violations of the Act by the Board and any individual defendants who are still trustees.

Defendants assert that such relief is not appropriate because, even if they violated the Act, the exception set forth in section 2(c) is somewhat vague. We conclude, however, that the two February 1988 closed sessions in which vital matters were discussed clearly contravened the objectives of the Act. Moreover, defendants in this case made no attempt to comply with the Act by limiting their closed session discussion to matters they may have believed were within the section 2(c) exception. Instead, they were discussing matters clearly outside the exception, such as closing off access to Route 83 from certain streets, having a noise barrier built along Route 83, and installing a sewer flap gate. For these reasons, we find that declaratory and injunctive relief is necessary.

Reversed and remanded with directions.

UNVERZAGT and NICKELS, JJ., concur.