FRANK DYDUCH, Plaintiff-Appellant, v. CRYSTAL GREEN CORPORA-
TION, Defendant-Appellee.

Second District No. 2—91—0118

Opinion filed November 22, 1991.

Brett E. Anderson, of Ariano, Anderson, Hardy & Castillo, P.C., of Elgin, for appellant.

Jay Orlowski, of McKenna, Storer, Rowe, White & Farrug, of Waukegan, and Christine L. Olson and James P. DeNardo, both of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiff, Frank Dyduch, appeals the directed findings entered in favor of defendant, Crystal Green Corporation, on both counts of plaintiff's complaint for negligence and breach of contract and from an order requiring plaintiff to pay defendant's costs and attorney fees as a sanction for a discovery violation. Plaintiff contends that the directed findings were against the manifest weight of the evidence and the award of costs and fees was an abuse of discretion.

Defendant is a lawn-care business, and, in 1981, plaintiff hired defendant to provide certain lawn-care services at plaintiff's home in Algonquin. In his complaint, plaintiff alleged that he had retained defendant to "examine, diagnose, treat, fertilize, and provide insect and weed control as recommended by [d]efendant for [p]laintiff's lawn" and that defendant had appeared periodically each year to do so. In 1988 and 1989, plaintiff's lawn was allegedly damaged by chinch bugs, sod worms and grubs. In count I, plaintiff alleged that defendant had a duty to inspect properly, diagnose and treat the lawn and that, in disregard of that duty, defendant negligently failed to conduct regular and thorough inspections, diagnose and treat insect infestations and apply insecticides as necessary. In count II, plaintiff alleged that defendant had breached its agreement to provide proper lawn maintenance.

There is no verbatim transcript of the trial, and the evidence is presented on appeal by means of a certified bystander's report. Plaintiff testified at trial that in May 1981 defendant, through a representative, inspected and analyzed plaintiff's lawn and quoted a price for service. At that initial inspection, defendant noted possible fusarium blight and sod webworm in the lawn. Plaintiff and defendant orally agreed that defendant would apply fertilizer and weed control four times per year, which occurred and for which service defendant paid until 1989. However, plaintiff declined disease and insect-control treatments available at an additional cost, with the exception of a single application of fungicide to treat the fusarium blight in June 1981. In 1982 and 1983, at plaintiff's request, defendant applied additional

weed-control treatment at no charge. Plaintiff testified that he "believed" that defendant was to maintain the lawn in an excellent condition.

In the summer of 1988, the City of Algonquin instituted a partial ban on lawn watering, and such watering was restricted to four hours per day on each of three designated days per week. Plaintiff observed that part of his lawn had become white and brown. He pointed this out to defendant during the late summer application of fertilizer and weed-control treatment. Defendant's representative responded that many lawns were similarly affected due to the severe drought.

In May 1989, plaintiff again pointed out the condition of the lawn during the application of fertilizer and weed-control treatment. Defendant's president, John Eckhardt, came out and inspected the lawn and opined that drought and fusarium blight had probably caused the damage. However, plaintiff had done some dethatching, laid new topsoil and reseeded part of the lawn prior to such inspection. In June, Steve Eckhardt again inspected plaintiff's lawn, in response to plaintiff's threat to cancel the service if defendant did not correct the problem, and again told plaintiff the problem was drought and fusarium blight. Plaintiff cancelled defendant's service and contacted Paul Dones of Chemlawn, who in June 1989 did an analysis of the lawn and advised plaintiff that the lawn had been damaged by chinch bugs the previous year. The cost to repair the damage to plaintiff's lawn was estimated to be $2,646, which included new topsoil, reseeding and resodding.

Chinch bugs are very difficult to identify, but Dones' opinion was based on the pattern of damage and discoloration. However, he did not see any chinch bugs when he examined the lawn because chinch bugs are destroyed by heavy watering, and the area had experienced heavy rainfall in the spring of 1989.

Lawn service representatives, who apply fertilizer and other treatments, are required to take certain courses, pass a test, and be certified by the State, and such training should enable a certified applicator to recognize lawn problems. However, because applicators only see a customer's lawn four times a year, the customer's prompt notification of any problems or changes in his lawn is essential.

Defendant moved for directed findings as to both counts of plaintiff's claim at the close of plaintiff's case. Because the agreement between the parties was only for the application of fertilizer and weed-control and insect-control services were never requested by plaintiff, defendant asserted that plaintiff's contract claim failed. Plaintiff similarly failed to establish negligence because defendant owed no duty to

plaintiff, which duty was defined by the contract, and, therefore, plaintiff's negligence claim failed. Plaintiff, on the other hand, argued that defendant had agreed to maintain, protect, and preserve plaintiff's lawn and such agreement included identifying any insect problems. Plaintiff relied on defendant to keep him informed of problems with the lawn, and defendant breached its duty to detect insect damage, which breach proximately caused the damage to plaintiff's lawn.

The trial court found that the only agreement that plaintiff had established was for fertilizer and weed-control services and not for insect control. Defendant did not have a duty to inspect the lawn for insect damage. The court granted the motion for directed findings as to both counts of the complaint. Plaintiff's subsequent motion to reconsider was denied, and plaintiff filed his notice of appeal. Plaintiff contends that the court erred in entering directed findings because he presented a *prima facie* case for breach of contract and for negligence. We disagree.

Pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110) in all cases tried without a jury, a defendant may, at the close of plaintiff's case, move for a directed finding or judgment in its favor. In ruling on a motion for a directed finding, the court must apply a two-part analysis, first determining as a matter of law whether a plaintiff has presented a *prima facie* case and entering judgment for the defendant if a plaintiff has failed to so do. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110; *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55.) However, if a plaintiff has presented a *prima facie* case, the court must weigh the evidence, including any favorable to the defendant, pass on the credibility of the witnesses, draw reasonable inferences and generally consider the weight and quality of the evidence. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110; *Kokinis*, 81 Ill. 2d at 154-55.) This weighing process may result in the negation of some of the plaintiff's evidence, but if sufficient evidence remains to establish the plaintiff's *prima facie* case, the court must deny the motion and proceed with the trial. (*Kokinis*, 81 Ill. 2d at 155; *Buechin v. Ogden Chrysler-Plymouth, Inc.* (1987), 159 Ill. App. 3d 237, 246.) The decision of the trial court to grant a defendant's motion for a directed finding will not be reversed on review unless it is against the manifest weight of the evidence. *Coryell v. Lombard Lincoln-Mercury Merkur, Inc.* (1989), 189 Ill. App. 3d 163, 169.

In order to meet his burden of proof on the breach of contract count, plaintiff was required to establish offer, acceptance, consideration, the definite and certain terms of the contract, plaintiff's performance, defendant's breach of the terms of the contract, and dam-

478

age resulting from that breach. (See *Mannion v. Stallings & Co.* (1990), 204 Ill. App. 3d 179, 186.) As to the terms of the contract, on appeal plaintiff argues that he and defendant had contracted "for Defendant to maintain and preserve Plaintiff's healthy lawn," and this would include regular inspections, diagnosis, and treatment of problems that arose in the lawn. Plaintiff contends that he knew that insect control and other services were available from defendant "and that they would be provided if necessary for the health and well-being of his lawn." Plaintiff's contentions, however, are not supported by the record.

According to the bystander's report, plaintiff testified that in 1981 he and defendant orally agreed "to begin a lawn program consisting of four applications of fertilizer and weed and feed per year." However, plaintiff "declined application of disease control and insect control which were available for additional fees." Finally, although plaintiff "believed that [defendant] was to maintain his lawn in excellent condition," plaintiff "never entered into a written agreement with [defendant] to provide insect control."

■■ We agree with the trial court that plaintiff's evidence established an agreement for fertilization and weed control only. Although plaintiff may have "believed" it to be the case, he did not present any evidence that defendant agreed to maintain the lawn in any condition, to inspect the lawn, to diagnose problems in the lawn, or to recommend or provide additional services if necessary. Rather, plaintiff initiated additional services when necessary, although only to control weeds. Plaintiff's own expert testified that the customer normally was responsible to notify a lawn-care provider of any changes in a serviced lawn. Although the evidence indicated that the damage to the lawn was caused by bugs and/or drought, there was no evidence of improper fertilization or weed control, which was the extent of defendant's contractual obligations to plaintiff.

Plaintiff's reliance in part on defendant's 1990 brochure wherein defendant made certain representations concerning the quality of its service and employees does not alter this result. The brochure refers to lawn care "for the 90's" and bears the handwritten date "3-24-90." Representations made in 1990 are not relevant to the terms of an agreement entered into in 1981 and terminated in 1989.

■■ Plaintiff also contends that the trial court erred in entering a directed finding on the negligence count. We again disagree. Where a defendant is charged with negligence because of his failure to perform an act allegedly required by a contract, the question of whether the defendant actually had a duty to perform the act usually must be de-

termined from the terms of the contract, and the defendant's duty will not be extended beyond the duties described in the contract. (*Perkaus v. Chicago Catholic High School Athletic League* (1986), 140 Ill. App. 3d 127, 134.) As set forth above, there was no evidence that the parties' agreement imposed a duty on defendant to provide insect control, to inspect and treat the lawn for this type problem, or generally to maintain the lawn in a healthy condition. Under the circumstances, since defendant had no contractual duty to perform these acts, it cannot be held liable in tort for damage resulting from its failure to perform them. We conclude that the trial court did not err in entering directed findings on both counts of the complaint.

Finally, plaintiff contends that the court erred in granting defendant's motion for costs and attorney fees as a sanction for a discovery violation. After the court granted the motion for directed findings, defendant made an oral motion for sanctions. Defendant alleged that plaintiff had willfully withheld the name of a witness, Bruce Spangenberg, who had inspected plaintiff's lawn. Unaware of that fact, defendant retained Mr. Spangenberg as its own expert witness shortly before trial. Prior to trial, defense counsel had only presented Spangenberg with a hypothetical set of facts, and Spangenberg was not aware of plaintiff's identity. However, when Spangenberg appeared in court on the first day of trial and became aware of plaintiff's identity, Spangenberg recalled that he had personally examined plaintiff's lawn in June 1989 and that he had written to plaintiff regarding the examination. In his report, Spangenberg said that the lawn problem was "drought injury, possibly combined with insect damage," and the insects mentioned were chinch bugs and sod webworms. Spangenberg informed defense counsel of these facts, and defendant sought sanctions against plaintiff for failure to disclose either Spangenberg's identity or report, despite specific discovery requests, to which plaintiff responded without objection.

Defendant had requested production of "[a]ll contracts, proposals, invoices, repair bills, or any other indicia of inspection, repair, or other work performed *** on the lawn," to which plaintiff had failed to produce Spangenberg's report. Another production request sought "[a] list giving the names, addresses and specialties of all expert witnesses," in response to which plaintiff had also omitted Spangenberg's name. Plaintiff had similarly failed to disclose Spangenberg's identity or report in response to interrogatories seeking "the name and address of [anyone] who repaired or estimated the damage" to plaintiff's lawn, and "statements of any witness, *** the name and

address of each such witness, the date of statement and \*\*\* whether such statement was written or oral."

Plaintiff's counsel argued that the failure to disclose was inadvertent and not prejudicial. However, plaintiff told the court that he "was aware of Spangenberg's report but did not want to produce it." The trial court found that plaintiff had willfully withheld Spangenberg's name and report, and it granted the motion for sanctions. The court awarded defendant all of its costs in the litigation and one-half of its attorney fees for a total of $5,036.81. On appeal, plaintiff contends that the award of all of defendant's costs and one-half of its attorney fees was an abuse of the trial court's discretion because the costs and fees were not incurred by defendant as a result of the misconduct, and because defendant was not prejudiced by the failure to disclose Spangenberg.

Pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)), if a party unreasonably refuses to comply with the rules of discovery, the court, on motion, may order sanctions against the offending party, and the sanctions may include the payment of "the reasonable expenses, including attorney's fees incurred by any party *as a result of the misconduct*" (emphasis added) (134 Ill. 2d R. 219(c)). The imposition of sanctions is a matter largely within the discretion of the trial court and should not be disturbed on review unless the order constitutes an abuse of discretion. *Kubian v. Labinsky* (1988), 178 Ill. App. 3d 191, 196.

Although the trial court is not limited to the sanctions enumerated in Rule 219 for discovery violations and may enter "such orders as are just," our courts have repeatedly stated that the purpose of sanctions for discovery violations is to accomplish discovery rather than to inflict punishment. (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 196 (discussing Rule 19—12(3) of the Civil Practice Act, the predecessor to Rule 219(c)); *Nunez v. Horwitz* (1990), 205 Ill. App. 3d 976, 983; *Nehring v. First National Bank* (1986), 143 Ill. App. 3d 791, 803.) The language of the rule is specific and very clear that an award of expenses as a Rule 219(c) sanction must be related to and the result of the specific misconduct. For example, the offending party may be debarred from filing any pleading "relating to any issue to which the [misconduct] relates" (134 Ill. 2d R. 219(c)(ii)), or debarred from maintaining any claim or defense "relating to that issue" (134 Ill. 2d R. 219(c)(iii)), or a witness may be barred from testifying "concerning that issue" (134 Ill. 2d R. 219(c)(iv)). In that section of the rule relating to the payment of ex-

penses, the rule specifically refers to those expenses incurred "as a result of the misconduct." 134 Ill. 2d R. 219(c).

■ In this case, the misconduct, which plaintiff does not deny, was the failure to reveal the name and report of Bruce Spangenberg in plaintiff's answers to defendant's interrogatories. We fail to see how the costs and fees awarded relate to the misconduct that occurred. We conclude that the trial court imposed this sanction strictly as a punishment for the discovery violation and that this was an abuse of discretion. Thus, the award of defendant's costs and attorney fees is vacated, and the cause is remanded to determine what costs and fees, if any, were directly related to and incurred as a direct result of plaintiff's misconduct.

In determining that it was an abuse of discretion to impose a monetary penalty in excess of the expenses incurred as a result of the discovery misconduct, we have declined to follow the reasoning of the Appellate Court, First District, in *Transamerica Insurance Group v. Lee* (1987), 164 Ill. App. 3d 945, relied on by defendant. In *Transamerica*, the defendant filed false answers to interrogatories, and, as a result of the false answers, plaintiff incurred $2,500 in attorney fees. As a sanction for the discovery misconduct, however, the trial court awarded plaintiff $5,000, twice the amount claimed. The Appellate Court, First District, affirmed the trial court's reasoning that such a penalty was appropriate because "[i]f the only sanction imposed upon discovery of the violation is the payment of attorney fees and costs, [false answers] may prove a cost-effective measure to be tried in future cases." In a vigorous dissent, Justice McMorrow argued that Rule 219(c) did not authorize such punitive sanctions. (164 Ill. App. 3d at 951.) We agree with Justice McMorrow and her conclusion that monetary sanctions pursuant to Rule 219(c) are limited to the reasonable expenses incurred by the innocent party as a result of the misconduct.

The directed findings entered in favor of defendant are affirmed, the award of costs and attorney fees is vacated, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; vacated in part and remanded.

UNVERZAGT and McLAREN, JJ., concur.