598 N.E.2d 337 (1992)
233 Ill. App.3d 147
174 Ill.Dec. 140
Roy A. RALLS, Plaintiff-Appellant,
v.
The VILLAGE OF GLENDALE HEIGHTS et al., Defendants-Appellees.
No. 2-91-0925.
Appellate Court of Illinois, Second District.
August 11, 1992.
Rehearing Denied September 21, 1992.
*340 Francis G. Libbe, Sandra L. Bucha, James Paul Costello, Ltd., Chicago, for Roy V. Ralls.
William J. Wylie, Thomas J. Laz, Stephen A. Rehfeldt, Wylie, Mulherin, Rehfeldt & Varchetto, P.C., Wheaton, for Village Glendale Heights and Concrete Structures of Midwest.
James T. Ferrini, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, for Advance Mechanical Systems.
William H. Weir, Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir, Johnson & David, Elgin, for Strand Associates, Inc.
Robert G. Black, Hinshaw & Culbertson, Lisle, D. Kendall Griffith, Hinshaw & Culbertson, Chicago, Thomas A. Brabec, Lisle, Douglas J. Esp, Hinshaw & Culbertson, Lisle, for Doetsch Bros. Co.
Justice NICKELS delivered the opinion of the court:
Plaintiff, Roy A. Ralls, appeals the order of the circuit court granting defendants' motions for summary judgment of both Ralls' claim under the Structural Work Act (Ill.Rev.Stat.1987, ch. 48, par. 60 et seq.) and his claim for common-law negligence based on injuries he sustained when he fell on a snow-covered earthen incline at a construction site. Ralls asserts that the circuit court erred in finding as a matter of law that: (1) the earthen incline was neither a support nor was Ralls engaged in ultrahazardous activity at the time of his injury as required for application of the Structural Work Act; and (2) defendants owed no duty to Ralls, which defeated his claim for common-law negligence. We affirm in part and reverse in part.
Sometime prior to February 1988, defendant Village of Glendale Heights (owner) contracted with defendant Concrete Structures of the Midwest, Inc. (general contractor), for the construction of a sewage treatment plant. The construction was designed and engineered by defendant Strand Associates, Inc. (engineer), and defendant Doetsch Brothers (excavator) was the subcontractor for the excavation work. Ralls was the jobsite foreman in charge of the work for the processed plumbing subcontractor, which supplied specialty piping for carrying fluids other than water. As the foreman, Ralls had been at the site daily for seven to eight months and had the authority stop his crews' work if the conditions were unsafe.
The engineer designed, among others, the structure referred to as the blower building, which was the site of Ralls' injuries and which had two entrances. The north entrance was at ground level, but the south entrance was six to eight feet above ground level due to a temporary construction road on the south side of the building. The temporary construction road was below the planned eventual grade to allow access to the foundations of other buildings at the site during construction. The excavator had, however, backfilled the foundation of the blower building six months before Ralls' accident to prevent frost damage. In so doing, the excavator had constructed an earthen incline to the south entrance, as well as a two- to three-foot-wide earthen pathway around the entire perimeter of the building. Deposition evidence presented to the trial court estimated the incline to slope at an angle between 45 and 60 degrees over a space of six to eight feet. After its completion, the earthen incline was routinely used by workmen to reach the south entrance of the blower building. Both the incline and perimeter path were smooth and free from ruts in February 1988.
On February 4, 1988, Ralls and a co-worker were performing tests designed to discover leaks in pipes located in another *341 building. Ralls was to turn on the water to fill the pipes, which he would then shut off when the pipe was full upon a signal from his co-worker. Overfilling of the pipes was to be avoided because freezing of the excess water would damage the pipes. The controls for the water were located in the blower building.
Because the north entrance of the blower building was blocked by masoners, Ralls' only access to the water controls was via the south entrance. Therefore, Ralls used the earthen incline to enter the south entrance of the blower building. However, the perimeter path from the north entrance could have been used to reach the south entrance.
On the day of the accident, the earthen incline was covered with five to six inches of snow with the exception of an 18-inch path that had been packed down by prior workers using the incline to reach the south entrance of the blower building. Ralls' hands were empty as he walked up the incline, entered the blower building, and turned on the water. He paid particular attention to his footing because the pathway was snow packed and icy. Although Ralls could have waited on the perimeter path outside the south entrance, he instead descended the incline to wait for the shut-off signal. Ralls then again began to walk up the incline when he fell to his knees. At his deposition, Ralls testified that, although in his opinion the earthen incline was not dangerous, he slipped on the snow and ice on the footpath on the incline after taking a few steps. As a result of the fall, Ralls suffered injuries to both his knees, which eventually required several surgeries and which caused him ongoing pain.
Ralls brought this action against all defendants alleging in one count under the Structural Work Act that the earthen incline was a support and that he was engaged in an ultrahazardous activity of the type typically occurring at a construction site within the contemplation of the Structural Work Act. In a second count, Ralls claimed that the defendants owed him a duty to provide a safe system of ingress to and egress from the south entrance of the blower building and, therefore, were liable under a theory of common-law negligence for his injuries.
All defendants moved for summary judgment as to both counts. The circuit court eventually granted those motions as to all defendants, and Ralls now appeals. Ralls asserts that the trial court erred as a matter of law in finding that the earthen incline was a mere pathway and not a support and in finding that Ralls' use of the pathway was not the ultrahazardous type of construction activity encompassed by the Structural Work Act. Ralls also asserts that the court erred as a matter of law in finding that the defendants owed no duty to Ralls.
Summary judgment is appropriate where no issue of genuine fact is present and the moving party is entitled to judgment as a matter of law. (Vuletich v. United States Steel Corp. (1987), 117 Ill.2d 417, 421, 111 Ill.Dec. 586, 512 N.E.2d 1223.) However, summary judgment should be awarded with caution so that the right to present a case in which a material dispute exists and so that the right to a trial by jury are not preempted. (Hagy v. McHenry County Conservation District (1989), 190 Ill.App.3d 833, 842, 137 Ill.Dec. 453, 546 N.E.2d 77.) It is a drastic means of resolving litigation and should only be allowed when the right of the moving party to judgment is clear and free from doubt. (Loyola Academy v. S & S Roof Maintenance, Inc. (1992), 146 Ill.2d 263, 271, 166 Ill.Dec. 882, 586 N.E.2d 1211.) Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. (Ill.Rev.Stat.1987, ch. 110, par. 2-1005(c); In re Estate of Whittington (1985), 107 Ill.2d 169, 176-77, 90 Ill.Dec. 892, 483 N.E.2d 210.) However, the evidence in the record must be construed strongly against the movant (Hagy, 190 Ill.App.3d at 842, 137 Ill.Dec. 453, 546 N.E.2d 77; Schroth v. Norton Co. (1989), 185 Ill.App.3d 575, 577, 133 Ill.Dec. 644, 541 N.E.2d 855), and, although *342 the party opposing summary judgment need not prove his case at this preliminary stage, he must present some factual basis that would arguably entitle him to a judgment under the applicable law (Fuller v. Justice (1983), 117 Ill.App.3d 933, 939, 73 Ill.Dec. 144, 453 N.E.2d 1133). If undisputed facts permit conflicting inferences, summary judgment should be denied. (Loyola Academy, 146 Ill.2d at 272, 166 Ill.Dec. 882, 586 N.E.2d 1211.) Because of this extreme standard, a trial court is without discretion to grant a motion for summary judgment. Loyola, 146 Ill.2d at 272, 166 Ill.Dec. 882, 586 N.E.2d 1211.
The Structural Work Act provides protection to those workers who are engaged in extrahazardous work. (Lafata v. Village of Lisle (1990), 137 Ill.2d 347, 353, 148 Ill.Dec. 732, 561 N.E.2d 38.) It includes not only devices used to support workers, but those used to support materials and applies to the failure to provide such support. (Meyer v. Caterpillar Tractor Co. (1990), 135 Ill.2d 1, 13, 142 Ill.Dec. 128, 552 N.E.2d 719.) However, although the Structural Work Act should be liberally construed to provide protection to workers engaged in particularly hazardous activities, it was not intended to cover all construction work. (Lafata, 137 Ill.2d at 354, 148 Ill.Dec. 732, 561 N.E.2d 38; Vuletich, 117 Ill.2d at 422, 111 Ill.Dec. 586, 512 N.E.2d 1223.) Thus, every device that elevates a worker is not a "support" within the Structural Work Act. (Vuletich, 117 Ill.2d at 422, 111 Ill.Dec. 586, 512 N.E.2d 1223.) Nor is every routine activity within the protection of the Structural Work Act merely because it fortuitously occurs at a construction site. Vuletich, 117 Ill.2d at 423, 111 Ill.Dec. 586, 512 N.E.2d 1223.
To sustain a cause of action under the Structural Work Act, a plaintiff must establish that he was: (1) involved in a construction activity, (2) with reference to a structure, (3) using a scaffold or other mechanical device, all of which must fit within the definitions and intended coverage of the Structural Work Act. (Smith v. Central Illinois Public Service Co. (1988), 176 Ill.App.3d 482, 488, 125 Ill.Dec. 872, 531 N.E.2d 51.) The plaintiff must then establish that (4) the scaffold or device was unsafe, (5) the unsafe condition caused the plaintiff's injury, (6) the defendant was in charge of the work at the time of the injury, and (7) that the defendant willfully violated the Structural Work Act. Smith, 176 Ill.App.3d at 488, 125 Ill.Dec. 872, 531 N.E.2d 51.
Whether a device is a scaffold or other mechanical device within the definition of the Structural Work Act is a question of law to be determined by the court. (Vuletich, 117 Ill.2d at 421, 111 Ill.Dec. 586, 512 N.E.2d 1223.) Three criteria are used to determine if a particular device is within the Structural Work Act, which are the intended use of the device at the time of the injury, the connection between the injury and the hazardous nature of the device, and the intent of the Structural Work Act to eliminate the type of danger involved. Ashley v. Osman & Associates, Inc. (1983), 114 Ill.App.3d 293, 297-98, 70 Ill.Dec. 133, 448 N.E.2d 1011.
However, in Vuletich, our supreme court recognized the distinction between a support, specifically used to accomplish some construction related activity, and a mere pathway. (Vuletich, 117 Ill.2d at 422-23, 111 Ill.Dec. 586, 512 N.E.2d 1223; see also Latronica v. Commonwealth Edison Co. (1988), 171 Ill.App.3d 202, 205-06, 121 Ill.Dec. 138, 524 N.E.2d 1186 (drilling rig not support when used as exit); Bolsmo v. Mark V Roofing Co. (1989), 190 Ill.App.3d 334, 337, 137 Ill.Dec. 689, 546 N.E.2d 634 (roof not support when used as access to exhaust fan); Choi v. Commonwealth Edison Co. (1984), 129 Ill. App.3d 878, 881, 85 Ill.Dec. 17, 473 N.E.2d 385 (upper story floor not support when plaintiff merely carrying construction materials across it).) Had Ralls been using a stairway to enter the blower building, Vuletich would be completely indistinguishable. However, even the minor distinction between a stairway and earthen incline in this case does not support Ralls' claim. The intended use of a stairway, both in Vuletich and generally, is to allow access. In contrast, the earthen incline in *343 this instance was constructed to protect the foundation of the blower building from freezing and was only incidentally used as an access to the southern entrance as a matter of convenience. Moreover, because the earthen incline was a mere pathway and not a device within the Structural Work Act, defendants' alleged failure to provide handrails cannot be deemed a failure to provide a support that is actionable under the Structural Work Act. Carnevale v. Inland Ryerson Building Systems (1988), 169 Ill.App.3d 740, 747, 120 Ill.Dec. 145, 523 N.E.2d 1056 (failure to provide support actionable only if support, if provided, would have been within Act).
Ralls cites Keyser v. Metropolitan Sanitary District (1987), 165 Ill.App.3d 696, 117 Ill.Dec. 327, 520 N.E.2d 678, to support his contention that the earthen incline was a support within the meaning of the Structural Work Act. However, Keyser is distinguishable.
It is the use of the device that is dispositive of whether the Structural Work Act provides coverage. (Vuletich, 117 Ill.2d at 422, 111 Ill.Dec. 586, 512 N.E.2d 1223.) Although the support at issue in Keyser was an earthen pile, the plaintiff was using the pile as a support to reach electric lights he was removing from the walls of the deep tunnel project. If such pile had not been present, the plaintiff would have used a ladder or other means of elevating himself to a height to allow the removal of the lines. Clearly, in Keyser the dispositive use of the device was as a support, which brought it within the coverage of the Structural Work Act.
Although Ralls also cites our recent decision in Heino v. Mellon Stuart Co. (1991), 222 Ill.App.3d 147, 164 Ill.Dec. 781, 583 N.E.2d 697, that decision merely recognized that the determination of whether a particular device is within the Structural Work Act is controlled by the use to which such device is put. In Heino, the plaintiff used the third-story floor/second-story roof as a scaffold from which to remove debris from a building under construction. The floor/ceiling was, therefore, used as a scaffold notwithstanding its attachment to a permanent structure. Heino, 222 Ill. App.3d at 150-151, 164 Ill.Dec. 781, 583 N.E.2d 697.
Ralls also asserts that the court erred in finding his walking up the earthen incline was not the type of ultrahazardous activity that the Structural Work Act was designed to protect. Once again, it is the use of the device that is dispositive of whether the Structural Work Act applies. (Vuletich, 117 Ill.2d at 422, 111 Ill.Dec. 586, 512 N.E.2d 1223.) Ralls' own pleading admits that he was using the earthen incline for ingress and egress, which are neither activities peculiar to construction sites nor ultrahazardous. Thus, the circuit court did not err in finding as a matter of law that the earthen incline was a mere pathway and not a support or in finding that Ralls use of the earthen incline for purposes of ingress and egress was not an ultrahazardous activity within the meaning of the Structural Work Act.
We now turn to Ralls' assertion that the circuit court erred as a matter of law in finding that defendants owed no duty to Ralls. To prevail on a claim of negligence, a plaintiff must prove the existence of a duty flowing from the defendant to the plaintiff that is breached and that proximately results in injury to the plaintiff. (Ward v. K mart Corp. (1990), 136 Ill.2d 132, 140, 143 Ill.Dec. 288, 554 N.E.2d 223.) The existence of a duty is a question of law, and, therefore, the existence of such duty is appropriate for resolution by the circuit court on a motion for summary judgment. Ziemba v. Mierzwa (1991), 142 Ill.2d 42, 45, 153 Ill.Dec. 259, 566 N.E.2d 1365; Kirk v. Michael Reese Hospital & Medical Center (1987), 117 Ill.2d 507, 525, 111 Ill.Dec. 944, 513 N.E.2d 387.
Ralls' third amended complaint asserted that the defendants failed to provide an adequate means of ingress and egress to the buildings at the construction site, failed to provide ladders or steps and handrails to accommodate such access, and failed to allow access to the blower building through the level north entrance. In finding that defendants owed no duty to *344 Ralls as a matter of law, the trial court focused solely on the duties imposed on a landowner or possessor of land by virtue of such status. (See Ziemba, 142 Ill.2d at 49, 153 Ill.Dec. 259, 566 N.E.2d 1365 (status as landowner is basis of duty).) The ice-and snow-packed footpath on the earthen incline that was created by the passage of other workers was the result of the prior days' snowfall, and Ralls was aware of the condition of the footpath. Thus, there was nothing to indicate that the accumulation was anything other than natural, or that the incline was not open and obvious. Therefore, the trial court found that defendants, as the landowner or possessors of land, owed no duty to Ralls to prevent injury caused by natural accumulations of snow or ice, or from the open and obvious incline. (See Harkins v. System Parking, Inc. (1989), 186 Ill.App.3d 869, 872-73, 134 Ill.Dec. 575, 542 N.E.2d 921 (owner has no duty to an invitee to remove natural accumulations of ice and snow); Deibert v. Bauer Brothers Construction Co. (1990), 141 Ill.2d 430, 437, 152 Ill.Dec. 552, 566 N.E.2d 239 (possessor of land has no duty to warn or take precautions against known and obvious conditions).) However, although the snow and ice was a natural accumulation, the circuit court neglected to consider that the known and obvious risk principle is not a per se rule relieving a defendant of the duty of reasonable care. Ward, 136 Ill.2d at 147, 143 Ill.Dec. 288, 554 N.E.2d 223.
A possessor of land remains liable for known and obvious conditions on his land when "`the possessor should anticipate the harm despite such knowledge or obviousness.'" (Ward, 136 Ill.2d at 149, 143 Ill.Dec. 288, 554 N.E.2d 223, quoting Restatement (Second) of Torts § 343A (1965).) "The only sound explanation for the `open and obvious' rule must be either that the defendant in the exercise of reasonable care would not anticipate that the plaintiff would fail to notice the condition, appreciate the risk, and avoid it [citation], or perhaps that reasonable care under the circumstances would not remove the risk of injury in spite of foreseeable consequences to the plaintiff." (Ward, 136 Ill.2d at 147, 143 Ill.Dec. 288, 554 N.E.2d 223.) A plaintiff's awareness of a condition is not always an adequate warning of the consequences of encountering it. (Ward, 136 Ill.2d at 149, 143 Ill.Dec. 288, 554 N.E.2d 223.) Thus, the scope of a defendant's duty may not be disposed of by invocation of imprecise and relative characterizations such as known or obvious. (Ward, 136 Ill.2d at 147, 143 Ill.Dec. 288, 554 N.E.2d 223.) Rather, the existence of a duty in the face of a known or obvious condition is subject to the same analysis of duty as is necessary in every other claim of negligence. Thus, we must consider whether Ralls' injury was reasonably foreseeable by defendants, the likelihood of his injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on defendants. See Kirk, 117 Ill.2d at 526, 111 Ill.Dec. 944, 513 N.E.2d 387.
In this instance, Ralls' deposition testimony expressly indicated that he was aware of the snow-covered condition of the incline and, therefore, particularly careful. Thus, Ralls was not distracted, and those cases imposing liability based on the foreseeability of a distraction to the plaintiff are not applicable. (See, e.g., Diebert, 141 Ill.2d at 438-39, 152 Ill.Dec. 552, 566 N.E.2d 239; Ward, 136 Ill.2d at 151-55, 143 Ill.Dec. 288, 554 N.E.2d 223.) However, similar to those cases, it was reasonably foreseeable that workers at the site would use the earthen incline to reach the south door of the blower building rather than use the longer and inconvenient perimeter path. It is uncontroverted that workmen did just that during the six months after the incline was created and before Ralls' accident.
Just as it is reasonably foreseeable that customers leaving a store will be laden with packages distracting their attention from a concrete post near the doorway (Ward, 136 Ill.2d at 151-53, 143 Ill.Dec. 288, 554 N.E.2d 223.) or that a workman would be concerned with falling debris from above rather than with the terrain beneath his feet (Diebert, 141 Ill.2d at 438-39, 152 Ill.Dec. 552, 566 N.E.2d 239), so, too, it was reasonably foreseeable that *345 workers would use the shortest path to the southern door of the blower building. This conclusion is reinforced by the necessity to use the southern doorway created by the blockage of the only other access to the building on the day of Ralls' accident. Thus, this was a case in which "`the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition.'" Ward, 136 Ill.2d at 149, 143 Ill. Dec. 288, 554 N.E.2d 223, quoting W. Keeton, Prosser & Keeton on Torts § 61, at 427 (5th ed. 1984).
Nor does Ralls' own opinion that the incline was not dangerous change this conclusion. Conditions that are seemingly innocuous may present an unreasonable risk of injury under certain circumstances. (See Diebert, 141 Ill.2d at 439, 152 Ill.Dec. 552, 566 N.E.2d 239.) Those circumstances include foreseeable distractions. (Diebert, 141 Ill.2d at 439, 152 Ill.Dec. 552, 566 N.E.2d 239.) Had Ralls attention been distracted by a foreseeable condition as he traversed the incline, the reasoning of Diebert would clearly control. In this instance, the seemingly innocuous incline became unreasonably dangerous when combined with other conditions impairing the traction, such as the snow and ice in this instance (Stroyeck v. A.E. Staley Manufacturing Co. (1960), 26 Ill.App.2d 76, 167 N.E.2d 689; see also Greenwood v. Leu (1973), 14 Ill.App.3d 11, 16-17, 302 N.E.2d 359 (causal connection required between slope and injury)) or arguably even when wet.
Neither the magnitude of guarding against the injury nor the consequences of placing that burden on defendants would be severe in this instance. The excavator offered testimony, as did the former manager of the general contractor, that an eight-foot sheet of plywood with strips of wood for traction could have been placed up the incline to the door or that sand could have been spread on the footpath up the incline.
Finally, an injury from a fall is quite likely. Thus, although defendants owed no duty to Ralls to remove the natural accumulation of snow and ice, and although the slope of the incline was open and obvious, the incline was nevertheless a condition such that defendants should have reasonably anticipated harm to Ralls despite such knowledge or obviousness. (See Ward, 136 Ill.2d at 149, 143 Ill.Dec. 288, 554 N.E.2d 223; Restatement (Second) of Torts § 343A (1965)). Therefore, the trial court erred as a matter of law in finding that defendants owed no duty to Ralls.
In light of our disposition of this issue, we need not consider the limited analysis of the trial court, which also failed to consider the duties created by either the municipal ordinances or the contracts of several of defendants. However, we note that the trial court was required to take judicial notice of such ordinances once brought to its attention (Ill.Rev.Stat.1987, ch. 110, par. 8-1001) and that violation of an ordinance designed to protect human life or property is prima facie evidence of negligence. (Kalata v. Anheuser-Busch Cos. (1991), 144 Ill.2d 425, 434, 163 Ill.Dec. 502, 581 N.E.2d 656.) To recover, a plaintiff need only show that he was within the class of persons to be protected by the ordinance and that the violation of the ordinance proximately caused his injury (Kalata, 144 Ill.2d at 425-26, 163 Ill.Dec. 502, 581 N.E.2d 656), and, unlike duty, causation is a question of fact inappropriate for resolution on a motion for summary judgment. Scott & Fetzer Co. v. Montgomery Ward & Co. (1986), 112 Ill.2d 378, 393, 98 Ill.Dec. 1, 493 N.E.2d 1022; Turner v. Roesner (1990), 193 Ill.App.3d 482, 488, 140 Ill.Dec. 415, 549 N.E.2d 1287; Kaplan v. Berger (1989), 184 Ill.App.3d 224, 233, 132 Ill.Dec. 461, 539 N.E.2d 1267.
Similarly, the trial court failed to consider the contractual duties of several of defendants, which required them "to erect and maintain, as required by the conditions and progress of the work, all necessary safeguards for safety and protection," "at all times to provide a safe area for workmen and Subcontractors to work," to use "proper warning guards and safety devices with respect to the construction *346 area," or which further provided that "prevention of accidents to workmen engaged upon or in the vicinity of the work [was defendants'] responsibility." Such contracts, therefore, also imposed a duty upon the contracting defendants independent of that based on their status as possessors of the land. See Dyduch v. Crystal Green Corp. (1991), 221 Ill.App.3d 474, 479, 164 Ill.Dec. 94, 582 N.E.2d 302 (duty in negligence claim determined by terms of contract).
The judgment of the circuit court granting defendants' motions for summary judgment is affirmed as to count I based on a violation of the Structural Work Act and is reversed as to count II sounding in common-law negligence.
Affirmed in part and reversed in part.
WOODWARD and GEIGER, JJ., concur.